Barbara A. DEFEE, Appellant,

v.

Michael G. DEFEE, Appellee.

No. 04–97–00661–CV.

Court of Appeals of Texas,
San Antonio.

March 18, 1998.

**720**

Anthony W. Walluk, San Antonio, for Appellant.

Carmen R. Rojo, San Antonio, for Appellee.

Before HARDBERGER, C.J., and LÓPEZ and GREEN, JJ.

## OPINION

LÓPEZ, Justice.

In this appeal, Barbara Defee asks this court to reverse the trial court's judgment on a bill of review. In the bill of review, Barbara Defee sought to set aside a decree of divorce entered on January 21, 1991. Barbara contends that she did not know that she was divorced until October, 1995 when she discovered the decree of divorce in the courthouse records. Because we find that Barbara's bill is barred by limitations, we affirm.

## BACKGROUND

Barbara and Mike Defee were married on December 21, 1968. After 19½ years, the couple decided to divorce and Barbara moved out of the family home. According to Barbara, she could not afford a lawyer, so she agreed to let Mike's lawyer handle the divorce. On May 14, 1990, Mike's lawyer filed his petition for divorce. Barbara and Mike met with the attorney to discuss the division of the couple's community estate and to agree on custody of the couple's two sons. No further action was taken on Mike's petition until January 10, 1991, when Mike asked Barbara to sign a document entitled "Waiver of Citation" and Barbara agreed.

In this document, Barbara waived "issuance of service and return of citation," and stated that she would either enter into an agreed order or be notified of a hearing. According to Barbara, she thought she was signing a document to relinquish custody of her children, and that she expected to be notified about when she was to go to court. After having the document notarized, Barbara gave the waiver to Mike and Mike returned it to his attorney.

Barbara testified at the hearing on her bill of review that she was never notified about when she was to appear in court. According to Mike, he called Barbara a few days after she signed the waiver to notify her about the time of the court setting for the divorce, and again on the day before the setting to remind her. Barbara, however, did not appear at the hearing. Mike testified that the waiver was presented to Judge Raul Rivera, the trial judge for the divorce, on January 22, 1991. After asking Mike a few questions, Judge Rivera pronounced Mike "divorced," and signed the decree of divorce. After-

wards, Mike stated that he called Barbara and told her that they were divorced. Barbara admits that Mike told her that they were divorced, but testified that she did not believe him.

The divorce decree awarded Mike custody of the couple's sons, all of his military retirement benefits and their community debts. Barbara now seeks to set aside the divorce decree entered over seven years ago, or in the alternative, to set aside the trial court's property division so that she can be awarded 49% of Mike's retirement benefits.

## THE EFFECT OF THE FILING OF THE WAIVER

The waiver Barbara signed on January 10, 1991, was a limited waiver in which she waived citation of service, but not notice. Barbara's attorney for her bill of review action discovered the waiver in the court's file on November 24, 1996. The waiver, however, did not bear the court's official file-stamp. When the attorney questioned the clerk about the document, the clerk annotated the waiver as "found in file 11–22–96, not entered in system," and file-stamped the document.

Barbara relied on the absence of an earlier file stamp in her bill of review to contend that the original decree of divorce was void because the waiver was not properly filed with the court prior to the granting of the divorce. At the hearing on the bill, Mike testified that his attorney gave the waiver to Judge Rivera during the hearing for his divorce. After hearing testimony, Judge Richard Garcia determined that although the waiver was not properly filed, Judge Rivera had placed the waiver in the file and that it had served as an effective waiver of citation.

In her first complaint, Barbara contends that the trial court erred in finding that there was an effective filing of the waiver. Because the waiver was not properly filed, she contends that the trial court did not have jurisdiction to enter the decree of divorce. Barbara relies on Rule 124 of the rules of civil procedure which prohibits the trial judge from entering a judgment unless "upon

service, or acceptance or waiver of process, or upon an appearance by the defendant." *See* Tex.R. Civ. P. 124. Because the document was not file-stamped at the time of the divorce, Barbara maintains that the waiver wasn't properly filed and thus, the trial court did not have authority to enter its judgment. As a result, she contends the divorce decree is void.

■ Normally, a document is deemed in law filed when it is placed within the custody or control of the clerk, regardless of whether the document is file-stamped. *See Standard Fire Ins. Co. v. LaCoke*, 585 S.W.2d 678, 680–81 (Tex.1979). This rule protects a diligent party from being penalized by the errors of the clerk. *Id.* at 680.[2] Here, the record affirmatively reflects that the waiver was found within the custody of the clerk, but the record is not clear about when or how the waiver was placed in file. However, finding that the waiver was placed in the file by someone other than the clerk, or at a time other than at the time of the divorce, would require considerable speculation. Understanding that the clerk is the custodian of the court's files, we believe that Judge Garcia's finding that Judge Rivera placed the waiver in the court's file, and that it served as an effective waiver of citation is a logical one, supported by the record. As a result, we conclude that the waiver acted as an effective waiver of citation and thus the decree of divorce is not void. Accordingly, we overrule Barbara's first complaint.

## STATUTE OF LIMITATIONS

Judge Garcia concluded that the bill of review was barred by the statute of limitations. In her second issue, Barbara contends that this conclusion is incorrect because (1) Mike did not affirmatively plead limitations and (2) the limitations period did not begin to run before November, 1994. Barbara ceased co-habitating with Mike permanently in November, 1994 and she contends that this was the earliest date she could have been aware that she and Mike were divorced. Because

**2.** Rule 74 also permits a party to file a document with the judge. In that event, the judge is to annotate the filing date and time onto the document and forward the document to the clerk. *See* Tex.R. Civ. P. 74.

she could not have known that she was divorced before that time, Barbara contends that the statute of limitations had not run on her petition.

A petition for bill of review must be filed within four years of the date of the disputed judgment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.051 (Vernon 1997). The only exception to the four-year limitation is when the petitioner proves extrinsic fraud. *See Law v. Law,* 792 S.W.2d 150, 153 (Tex. App.—Houston [1st Dist.] 1990, writ denied). Extrinsic fraud is fraud which is collateral to the matter tried, and not something that was actually or potentially at issue in the trial. *Id.* Extrinsic fraud is the type of fraud that prevents the party from litigating the issues; for example, if a party did not know of the suit. *Id.* The bar of limitations does not commence to run until the petitioner discovered, or in exercise of due care, ought to have discovered the fraud. *See Maddux v. Brownen,* 759 S.W.2d 183, 185 (Tex.App.— Waco 1988, writ denied). Thus, whether Barbara's bill of review was barred by limitations depends on whether Mike defrauded Barbara about being divorced.

Judge Garcia found that Barbara was informed of the divorce on the same day or the next day after rendition. He also found that Barbara failed to prove that Mike committed extrinsic fraud. These findings are supported by the record. Barbara testified that prior to signing the waiver, she accompanied Mike to see his attorney to discuss the terms of the divorce. Sometime afterwards, Barbara signed the waiver of citation. Mike testified that he told Barbara they were divorced after the hearing before Judge Rivera. Mike also testified that he gave Barbara a copy of the divorce decree and showed her in the newspaper where the divorce was announced to the public. Xavier Santiago, a friend of Barbara and Mike, testified that Barbara told him in late January, 1991 that she was free of Mike and the children.

Barbara admitted that Mike told her they were divorced, but stated she did not believe him. She further testified that she and Mike resumed living together as husband and wife several months after the divorce so that she had no reason to suspect that she was di-

vorced. However, the notes Barbara relied on during her testimony indicated differently. The notes contained the following questions: (1) "Should I tell them about going to his lawyer and about a decree supposed to sign? [sic]" (2) "Should I tell him Mike called me to . . . tell me we were divorced or what?" (3) "Should I say he did, if they bring it up?" (4) "After he called and told me we were divorced, I didn't believe him because I hadn't signed the decree." These notes seem to indicate that Barbara knew she was divorced shortly after the hearing before Judge Rivera.

Contrary to Barbara's testimony, Mike testified that he permitted Barbara to return to the family home to help her out because she lost her job, but he denied living as husband and wife. This testimony supports Judge Garcia's findings. Although Barbara may not have believed that she was divorced, she did not prove that Mike defrauded her about being divorced. Having accompanied Mike to see his attorney and having signed the waiver, Barbara should have known about the divorce when Mike told her that they were divorced.

Because Barbara did not prove that Mike defrauded her about being divorced, the statute of limitations began to run on the bill of review on or about January 22, 1991. Under Rule 329b(f) of the rules of civil procedure, the trial court can set aside a judgment challenged by bill of review if the bill is brought within four years of the date of the judgment. *See* TEX.R. CIV. P. 329b(f). Barbara's bill of review was filed on November 26, 1996—over five years after the divorce. Thus, the trial court had no authority to set aside the divorce decree. Because the bill of review was not filed within the four-year limitation period, we overrule Barbara's second issue. The bill of review thus being barred by limitations, we affirm the judgment of the trial court.